235543 Century Aluminum Company et al. v. Certain Underwriters at Lloyd's London. Arguments not to exceed 15 minutes per side. Mr. Myers for appellant. Good morning. Good morning, Your Honor, honorable panel. May it please the Court, Marty Myers from Covington and Burling representing plaintiff appellant Century Aluminum. I would like to make three points with the panel this morning. This appeal starts and should end with the plain and ordinary meaning of the insurance policy at issue. First, this appeal turns on two words in Century's cargo policy, physical loss. Under the plain, ordinary meaning of that phrase, under the rules of construction for the state of Kentucky, which all parties agree are applicable, the stranding of Century's alumina on barges on the Ohio was physical loss. The district court erred by ignoring the plain meaning of physical loss and the instead requiring that Century's show a permanent deprivation of the property. There is no such permanent deprivation or permanence requirement at all, not in any of the case law, certainly not in the policy. Not in any of the case law. We have a lot of COVID cases. Indeed, Your Honor. They've taken this on and, you know, what do they require? Some tangible change or destruction? Indeed. What do we do with that? Santos, Your Honor, which is the lead case. It applied Ohio law, but the rules of construction are the same in Ohio. Those cases focused not on permanence of the deprivation of property, but rather the deprivation of all use as opposed to one use. In the case of Santos, we had, of course, a separation of use. It wasn't a deli. It was a restaurant which could still do takeout. So it wasn't deprived of all uses. But it also didn't tangibly change it. I mean, that's also part of it. Correct, Your Honor. We don't have that here either. We do. We have physical, if you take the OED meaning, the physical, which is having material form and tangible. That is the alumina which was stranded and sitting on the barges. It was physically lost to us. So delay counts as physical loss? No, Your Honor. Deprivation of use. Delay is actually covered under other sections of the policy, particularly the marine consequential. I'm sorry, the sue and labor clause, which I'll try to touch on later. Can I just, one little thing to clear that I didn't quite understand. So these policies incorporate cargo clauses. And I think it's the physical loss provision that's kind of essentially adding to the cargo clause. But then the cargo clause has exceptions for things like detainment and delay. Should we be ignoring the cargo clause? I know it wasn't briefed, but I'm just trying to figure out how this all fits together because the physical loss is an exception to the cargo clause, but yet no one's talking about the cargo clauses. Why is that? It's a historically complex world of cargo insurance underwriting. You don't have to tell us it's complex. This is an all risk policy. Got it. Why doesn't the delay exceptions in the cargo clause apply? There aren't specific delay exceptions at issue here, Your Honor. No, that's why I'm trying to figure out. The cargo clause has an exception for delay. Damage arising from delay. It's 13C. So that's the one that has the war, the strike. Ah, that's the strike civil commotion clause, Your Honor. There are three different ones. One is war, one is strike, and C just delay. Right. And that's the strike war, strikes, riots, and civil commotion clause. Those clauses were not triggered here. Those are not the clauses that are at issue. I'll read it to you. Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether caused by pounds, insured against, or otherwise. That's independent of war, independent of strike. I mean, I just can't understand why, aren't these the backdrop of everything, the cargo clauses? Your Honor, cargo clauses refers to all of the clauses in the policy. Yes. The backbone of this policy is the interest insured clause, which covers all risk of physical loss from any external cause whatsoever. So you can have an exception to this, which makes it just physical loss, not anything, but then the exception, the accepted underlying policy, which has other exceptions, don't count. Is that, have I got it right? The clauses Your Honor is referring to were not triggered in this particular situation. We triggered the interest insured under the all risk coverage for physical loss. Okay. And we, the district court held, Your Honor, that there was some kind of permanent deprivation required. Santos, Estes, which was a case under Kentucky law, neither of those cases required a permanent deprivation. A loss of use of property is sufficient. A loss of all use of the property, which is what Century suffered here. And no limit to that principle? I mean, they say, gosh, we got a little malfunction thing, it's going to take a day. Can you just leave the barges there? That delay of a day? Conceivably, Your Honor, it could. However, that goes to damages and deductible. If it doesn't last, then there aren't going to be damages that are recoverable. If it is stuck just for a day, let's take the fish that have to get to the restaurant the next day before it's spoiled. And there are many cases in that regard. One day of delay makes that cargo worthless if it doesn't get there. So you are permanently deprived of the fresh fish. There would be a physical loss with the fish case. I beg your pardon, Your Honor? There would be a physical loss in the fish hypothetical because it would be a tangible change in the property. Correct, Your Honor. There's no requirement of a tangible change. It is deprivation. That's what Your Honor held in the Santos case. It's a deprivation of use which is sufficient. It need not be permanent as long as... We didn't talk about tangible changes to property in Santos. I beg your pardon? We did not talk about tangible changes to property in Santos? You did, Your Honor. Okay, that's what I thought. That's an element. However, Santos held that the deprivation of use had to be the deprivation of all use of the property. If you could use your dental practice to do emergency procedures, if you could use your restaurant for take-out, you're not deprived of all use. Here, because the Illumina was stranded by the Corps of Engineers and we couldn't get to it unless we took heroic efforts, which we were required to do, by the way, under both the Sue and Labor Clause and mitigation, and this goes to the third point I was going to make, Your Honor, in argument, which is the Shipping Expense Clause, which provides coverage for shipping costs which are incurred where the cargo is not delivered. The district court transformed that into never delivered. Here, the cargo was not delivered. It was sitting on the Ohio River. We had to take extraordinary efforts and spend $5 million getting the cargo offloaded and sent to the plant. We were required to do that under the Sue and Labor Clause. The Sue and Labor Clause pays in the case of actual or imminent loss of the cargo. Here, the loss was certainly imminent. The record is replete with proof of centuries timing on inventory and when it was going to run out of the Illumina. There were many fact questions in the trial court around whether the loss was imminent. The district court sidestepped the Sue and Labor Clause by imposing the so-called object of the contract test. That test doesn't exist under Kentucky law. If the object of the contract controlled the Sue and Labor Clause, then the object was twofold. Number one, preventing physical loss of the Illumina on the barges and two, preventing a pot line freeze which would have occurred if the Illumina didn't get into the pot lines at the plant. The Sue and Labor Clause applies because there was an imminent loss which would have been covered either physical loss by deprivation of all use of the Illumina or a pot line shutdown which was covered under another section of the policy called the Marine Consequential Loss section which covers loss of profit due to suspension of operations for any reason. That, not any reason, but certain enumerated reasons. That clause clearly applies and the object of the contract test which the district court... That last point is because, I mean there wasn't a shutdown, but because the Illumina was diluted and not as... No Your Honor, it was because we took heroic efforts. The Sue and Labor Clause is supposed to pay us to sue and labor to save the goods which is exactly what we did. And this is the catch 22. What's your best case that I should look at to prove you're right where the delay, I assume for a second physical loss, is government driven? Reinhold, Your Honor. Reinhold and the other cases are pretty uniform in saying the risks covered. This is the detainment by the king, princes, or people of any nation whatsoever. That is detainment by the district court. But I mean they weren't detained. They were able to go back down the river. Well, they weren't permanently detained, but Your Honor, they were detained. The Corps of Engineers stopped the barges and they were... That's not detention. You can't keep going this way. I don't think of it as a detention when there's a traffic jam and I have to go off and take a different route. Was that a detention? Your Honor, I think what you're referring to is seizure which is what the district court focused on. Seizure is one element. Detainment is quite another. Detainment, we can go back to the plain ordinary meaning of the policy, is simply stoppage. And that's what we had here. I have a question on the provisions then. Do you see the risk covered provision, do you claim that it expands the coverage provided in the all risks provision? Or is there daylight between those two provisions and how would you say that would work to your advantage or not? Yes, Your Honor. The risks covered clause enumerates some of what are covered as all risk of physical loss from any external cause. So they are simply historical enumerations of certain of the risks which are covered. This is the SRCC clause that Judge Sutton was referring to, strikes, riots, civil commotions, detainment by the kings, princes, and people whatsoever. These policies are thrown together with many, many, many, many, many clauses that have historically developed and they just toss them in. Will you get your full rebuttal? And now we'll hear from the other side. Thank you. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Jeremy Grable from Phelps Dunbar on behalf of Underwriters. Judge Sutton, I was going to use the traffic jam example. That's what this is. This is a temporary delay in shipment up the river. And I do think that Santos is directly on point. Century is trying to make this case way more complicated than it is. In Santos, this Court analyzed the exact same policy language, physical loss. And Century wants to focus on the word loss, which this Court did recognize involves some sort of deprivation. But it's a physical loss, as Your Honor noted, a tangible deprivation of property. Something that is destroyed or stolen, perhaps, that requires repair or replacement. The cargo in this case did not suffer such a physical loss. It was stuck in a traffic jam on the river. It had to turn around and it got to the plant. It is true in Santos, we pointed out, that you could use the property in other ways, the restaurant. How was that true here? In other words, imagine that the pot does shut down. I mean, they do run into the crisis because they can't get there in time or the locks stay closed for longer, whatever the problem is. Right. Well, the whole pot line freeze concept, that there was a risk to the plant of a shutdown, that's not an insured loss under this policy. The policy insured the cargo. And that's true even under the Sue and Labor Clause? Yes. So the Sue and Labor Clause, the concept of Sue and Labor, is if there's an imminent physical loss to the insured cargo, and you take steps to prevent that, for example, it's on a vessel and there's a hurricane approaching, if you're able to fly a helicopter in and get the cargo off the vessel and save it. So you have avoided an insured loss. So that inures to the insurer's benefit and therefore under the Sue and Labor Clause, we'll pay you for that. We'll pay for the helicopter. So what would have happened if Century had rerouted the Illumina but it arrived too late and there was a pot line freeze? Would you have covered that? Would this policy have covered that harm? I don't believe so, Your Honor. I don't believe so. Because there was never a risk to the insured property, a risk of physical loss to the insured property. It was simply delayed. And there's separate insurance for that type of situation? And so separate, I guess I'm struggling with the idea that someone purchases an all-risk policy and one of the known risks to them occurred. And your explanation is that, yes, that is a known risk, but this all-risks policy simply did not cover that. You should have bought a different policy. Right, Your Honor. I think the answer to that is that it's an all-risk to the cargo. So it's a marine cargo policy. The first substantive page of the policy says that. We're insuring all risks to the cargo of physical loss or damage. And so if your cargo happens to be fish rather than some metal ore that does not degenerate, that would be physical loss? I believe so. The fish is different. The fish is going to spoil and it's effectively destroyed. So that's a different scenario. This is alumina, raw material. They could have done the same thing. They could have brought a helicopter in and pulled off a James Bond move and got it to the plant on time. But why can't you argue that you could have pulled a James Bond move on the fish if you had been just a little bit quicker and you could have by paying another million dollars to get that helicopter there to pull those fish off and take them? That would be recoverable. That is recoverable. So we're getting into a lot of hypotheticals. If you pulled the James Bond move on the fish, that would be covered under the Sue and Labor Clause because the delay with the fish is going to lead to physical damage. So if you prevent physical damage to the fish through your Sue and Labor activities, that's covered under the Sue and Labor Clause. What is the right, I'm not saying a mistake, it's impossible to see the future, but someone that has their problem, which is they do need this at a certain time and so shipping delays are a big deal for them, was the mistake in having it cover only physical loss? I mean the word physical drives everything? Yes, Your Honor. This is a particular type of insurance. The extra expense clause is not part of this policy. We paid that. That's a million dollar limit that covers sort of... I mean if it had just said loss, they get coverage. So the word physical, I mean the whole case turns on the word physical? I think that's right. I think that's right. I don't want to think through it. There may be other issues if the policy just said loss, but it is clear that the physical loss, that's what this Court focused on in Santos and Estes and that's the language we have. So I do think that's the critical language. Why is it a loss? What was a loss? What was the loss? Delay was a loss or I'm just trying to... Yeah, that's where you get into deprivation. So we talk about loss being a deprivation. Is a temporary deprivation a loss? Again, I would argue probably not. Maybe reasonable minds could differ on that, but it's temporary. They always had, I guess my key point, they always had access to it. They told the barge to turn around and unload the cargo. They could have taken it off in a different way. Nobody ever boarded the vessel. Well, aren't we back to Clause 13C of the cargo clauses? And why doesn't that's coverage for loss, damage or deterioration arising from delay? I think the law generally recognizes and has for centuries that marine all risk policies cover all risks. And why is this not a risk that would be covered either by 13C of the cargo clauses or just simply by being an important component of the very reason this company purchased this kind of all risk coverage because they knew their mechanism of working and their mechanism of working meant if there was a pot line freeze, they lost $20 million. You know what she's referring to with 13C? This is part of the cargo clause that I was asking your friend about. Right, but it's an exception, I believe. Exactly. It's an exclusion. Exclusion. But why hasn't that been briefed before? What am I missing about this? We just didn't get there, Your Honor. So in an insurance case, the insured has the burden of establishing that the loss falls within the insuring language. If they can establish that, then we would have the opportunity to come in and say, wait a minute, it's excluded. So we don't even get to the exclusions. But just... But you're right. I think if the court wanted to proceed to those exclusions, it clearly would be excluded. But to the extent physical loss can somehow be shown by delay, then this would apply. That's right. Does that mean then the fish hypothetical, they wouldn't win under that either? Because that's a delay damage. That's why the fish went bad. So I've actually not been thinking about the exclusions. When we were talking about the fish hypothetical, I'm talking about whether it would fall within the initial... I know, I know. I got it. It falls within physical loss, and now I'm just trying to say, okay, this is your point. We do that first. Now we look at exclusions, and I'm just trying to say that's a delay-based loss, so... Yeah, that would probably be excluded as well. I see. But you don't... But we don't get there because, again, because you have to analyze the insuring language. So I want to get... Well, I won't say get back to you because we haven't really left it. I want to make sure that I understand what you're saying on the physical loss. It sounds to me like what you're saying is that no matter what, the physical loss has to be to the alumina itself. So the fact that there may be this... I keep wanting to say pot filler. I know it's not pot. Pot freeze. The pot freeze. Pot line freeze. The pot line freeze. Why would we know that? The pot line freeze would really be damage to something else that perhaps you should have a different policy for, but it's not the alumina itself. And so from your perspective, what this language means is alumina only. That's right. Now... Okay. That's right, Your Honor. Now, Counsel Sensory invokes the Marine Consequential Loss Clause, and they would argue that, well, damage to the facility or a pot line freeze, that's consequential loss. But they ignore the second half of the Marine Consequential Loss Clause, which requires that that consequential loss flow from a covered loss, from physical loss or damage to the alumina. So that's why this case is fairly simple. If you look at the key language, physical loss or damage to the alumina, that did not occur. So none of these subsidiary clauses, sue and labor, Marine Consequential Loss, shipping expense, they're all tied back to that key language. How does the Risk Covered Clause impose the physical loss limit? So it's at the end of the Risk Covered Clause. Let me pull that up. So assuming for the sake of argument that there's a detention or some sort of arrest or seizure, which we don't think there is for the reasons you've pointed out, Your Honor, at the end of the Risk Covered Clause, it requires that that sort of a detention come to the, quote, hurt, detriment, or damage of the said goods, which is co-existent, essentially the same as physical loss or damage. Hurt, detriment, or damage to the goods. So even under the Risks Covered Clause, which again is a sort of an esoteric clause that has been in these policies for a long time, it doesn't expand the scope of coverage. Is that an exception or a general rule? It's just a general. I don't know if that's a joke for you or me. Sorry. So do you view the interplay between the Risk Covered and the All Risks Clause as the same as counsel said, that really this is just a feature of history that's always been in here and it doesn't... It doesn't really do much because of that last language. That's the difference. I think Century would argue there's a detention, so the Risk Covered Clause is triggered. And my point is, I don't think it's a detention. But if it is a detention, you still have to prove hurt, detriment, or damage. And I think the district court recognized that. So it all folds back in, again, it all folds back in on the key language that requires a physical loss or damage to the cargo. And again, Judge Strange, that's sort of my response to your question is, it is an all risks policy, but it defines kind of the risk to the cargo. So it's, I think you have to look at the language. You can't just rely on it being a general all risks policy. So you're just going on the original definition. You don't reach any of the exclusions. You just say that, and to prep a quick education for me, what would the nature of the risk name of the policy be that would cover the type of problem that occurred here? It's a good question, and it's actually in the record. It's a trade disruption insurance, TDI. And there's an email in the record, I think it was Exhibit P, Exhibit P to our summary judgment motion, I think it's page 12, 15, and 16 of the record. Century's risk broker was aware of that type of policy, and they decided not to buy it. They relied on this policy and the $1 million in extra expense coverage, which underwriters paid. So again, there's a lot of different kinds of insurance. They could have insured against the risk to the plant. They decided to rely on this policy, which only insured the cargo, and the cargo was never subject to any risk of physical loss or damage. I asked your friend on the other side what was the best case for them on physical loss and so forth, and he said Reinhold. Do you know that case? So Reinhold is a World War II case from 1948, and it really did deal with the risks covered clause concept, the detention by princes and kings. I don't think it's all that helpful. A government agent boarded a vessel, which was part of the protocol during the war apparently, and the issue was whether that amounted to a detention. I think the court said, the Second Circuit said that it did not, because he really wasn't exercising any control over the cargo. He was more concerned with the vessel. The implication was if it had lasted longer, it would have been a detention? I don't think they even imply that. But does the case get to the next point, which when you go to the language at the bottom about the damage that has to occur? No. Doesn't go to that. Okay. All right. I don't think it talks about that. So it's a detention case. I got it. It's a detention case during the war, and I just don't see it doing much work here. So let me, I think I hit. Well, what about their, you know, the cost they incurred? Let me just make sure we've, I think I'm circling you back, so forgive me a little bit, but just to make sure I'm getting this. So I get the point that if it's not physical loss, that doesn't apply. But I guess otherwise you would say it was reasonable and necessary to do what they did? Would you concede that? Because they were trying to avoid a pot freeze, so. Sure. Look, from a business perspective, absolutely. They didn't want their plant to shut down. But that doesn't mean that insurers insure that kind of a business decision to pay. I mean, I think they. How about the reality that the ultimate product was diluted in terms of quality? I don't know that there's any suggestion or evidence in the record of that, Your Honor. Oh, I thought there was, that they had to get other alumina, and it was a lower quality so the aluminum that is produced was worth less. I'm not aware of that. I didn't see that in any of the briefing or argument. But no, I don't think, my understanding was that of the 11 barges, one got through and made it on time, the other 10 were rerouted, and that the plant never shut down, and they never had any sort of lost profits. I mean, that was one of the other requirements under one of these clauses. They'd have to show a reduction in their production, and that was never proved up. So I'm not sure about that. I think at the end of the day, Your Honors, in Century's brief, if you wanted to distill it, they're arguing that the temporary loss of use amounts to physical loss or damage. And I think this Court clearly rejected that in Santos. And this Court should affirm the Supreme Court's opinion in this case. Okay. Thanks very much.  Mr. Myers. Thank you, Your Honors. Taking it back to the beginning and the end, plain meaning of the policy language on physical loss. Physical, having material existence. Loss includes, this is the OED definition, the partial or complete absence of a physical capability or function. The Illumina was stranded on the barge. We just couldn't get to it or use it for anything. That's what distinguishes this case from Santos and Estes and all the other COVID-19 property coverages. Conceptually, then, if you look at the types of insurance contracts that are available, your opposing counsel suggests that this is a cargo destruction only, and that what you're talking about is trade disruption, and you needed a trade disruption policy to cover this type of loss. Why is that not an accurate distinction between the two types of policies that are available for purchase? There is no trade disruption policy at issue here. We didn't buy one. We didn't think we needed one, because we had a cargo policy that covered physical loss. But are there such things as trade disruption policies in the abstract? They consider all kinds of things, Your Honor. The risk managers look at and get pricing proposals for all kinds of different coverages. But if I walked in and said I want a trade disruption policy, they wouldn't look at me as if I had two heads, right? In this environment, Your Honor, for the past few years, they might, only because it's gotten so expensive because of inflation and supply chain problems that nobody was able to purchase it over the last few years. It does exist. Century does not dispute that. What's much more important here, Your Honor, and that Mr. Graybill failed to focus on, is the Marine Consequential Loss Clause. That specifically covered an interruption of our business and loss of profit from a failure of supply. Remind me where that is in the contract. I don't have the page site, Your Honor. I believe it's about 14 pages in on the page version that was submitted in the record. It takes up about six pages. As Mr. Graybill pointed out, the Marine Consequential Loss Clause does refer back to having some physical loss or damage. We don't dispute that. But why is it covered? The Sue and Labor Clause, which applies to actual or imminent loss. And it's that phrase, imminent, that underwriters say, irrelevant, not important. It's fundamental under the Sue and Labor Clause because the loss was imminent. We couldn't get the Illumina. We had to spend the $5 million. I thought the word was damage. I beg your pardon? I thought the word he quoted was damage at the end of that clause in terms of what you could recover for under Sue and Labor. I believe it was physical loss or damage. Well, maybe a simpler way to put it, you agree physical loss is required for everything. That's the simplest way to put it. There's not a clause here where you can get coverage without showing physical loss. Am I right about that? No, Your Honor. Okay. That's why I... There is the Extra Expense Clause, which underwriters have pointed to as a clause that does not require physical loss or damage. There's the Import Duty Clause on page 12. There's the Increased Value on Arrivals Clause on page 12. There's the Marine Consequential Loss Clause. You're talking about the ones you're relying on. No. Import Duty, Increased Value on Arrival, we're not claiming under them. They're not relevant. That's what I mean. Oh, of course, Your Honor. I'm trying to simplify the case. Sorry to cut the wrong direction here. No, you're right. I'm asking, you're invoking clauses on behalf of your client. Which one of them does not require physical loss? I thought the answer would be zero, that we're all fighting about what the meaning of physical loss is. Many of them. No, the ones that you're using, invoking. The ones that we are invoking that do not require physical loss are Sue and Labor, which requires actual or imminent loss or damage. Even if it doesn't... It does require damage. That's what I was trying to... That's what started us down this road, and now you're agreeing it does require damage, as he quoted. It requires imminent damage. Not that the damage actually occurred, Your Honor, and that's the whole point here. The damage was going to happen if we couldn't get the alumina off the barges. That would have been insured if the pot lines froze. We had no choice but to get it. We're now in a catch-22. But your damage was going to be not to the alumina, the actual physical alumina, but rather something at the plant. Isn't that a problem? No. Those are the costs that we incurred as a result of the risk covered here, which is the risk of physical loss. I would say the risk was delay, and that's why I'm so puzzled it wasn't briefed below. I mean, I get it, the physical loss. I get it's a threshold question, but it's very puzzling to me that there wasn't more discussion of the delay exception. That just seems so significant. Century's view, Your Honor, is that applies only to the strikes, riots, civil commotions. There's just no way you would... I hear you, Your Honor. ...that's coherent to me. It's got Section 13, general bolded language. A is war, B is strike, and C is delay. C doesn't incorporate the ones before, in the same way the strike doesn't incorporate the war, the war doesn't incorporate the strike, and C is just delay. Those clauses were added to the policy, Your Honor. We believe as a specific set of risks and the exclusions in them and limitations apply to those risks, the strikes, riots, civil commotion. That's Century's understanding of how that operates and why all delay or any risk of delay is not necessarily excluded. The policy covers all risk of physical loss. And on the Sue and Labor Clause, I cannot stress enough the importance of actual or imminent. It doesn't matter whether or not the loss occurred. If it was imminent and the record is replete with proof that it was... This is a point we've heard. Yes. I think we have it. So thank you very much to both of you for very helpful briefs. It's really nice to have some experts and both of you clearly fit the bill. So thank you. We're really grateful and thank you for answering our questions and case will be submitted.